DEAN D. PAIK (State Bar No. 126920)
COHEN & PAIK LLP
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone:   (415) 398-3900
Facsimile:   (415) 398-7500

PAUL S. GROBMAN (appearing *pro hac vice*)
555 Fifth Avenue, 17th Floor
New York, New York 10017
Telephone: 212.983.5880
Facsimile: 415.682.7060
Email: grobtown@aol.com

Attorneys for HELEN and MARTIN YACK
on behalf of themselves and all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN and MARTIN YACK on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON MUTUAL INC., SUNLAN-020105, LLC; SHERIFF'S DEPARTMENT, COUNTY OF LOS ANGELES, CALIFORNIA; CLERK'S OFFICE, COUNTY OF BUTTE, CALIFORNIA; and DOES 1-10,<br><br>Defendants. | Case No.: 07-5858-PJH<br><br>**PLAINTIFFS HELEN AND MARTIN YACK'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING**<br><br>Hearing:<br><br>Date: June 25, 2008<br>Time: 9:00 a.m.<br>Courtroom: 3<br><br>The Honorable Phyllis J. Hamilton |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**I.     INTRODUCTION**

Defendants Washington Mutual Bank ("WaMu"), Sunlan-020105, LLC, ("Sunlan"), and the County of Los Angeles Sheriff's Department, ("Sheriff's Department"), (collectively "Defendants"), allege that Plaintiffs Helen and Martin Yack, (the "Yacks" or "Plaintiffs") lack standing to bring the claims asserted in the first amended complaint, ("FAC"), because they

failed to identify them in the bankruptcy action filed in July 2007.[1] According to Defendants, because the Yacks failed to schedule the claims, they remain assets of the bankruptcy estate, and the Yacks have no standing to bring them here.

The Defendants are wrong. First, even if they were correct (which they are not), the Court could not dismiss the FAC because Defendants' standing argument applies only to claims for monetary damages. Plaintiffs have brought claims for declaratory and injunctive relief and their standing to bring these claims is in no way affected by the alleged failure to schedule them as assets in bankruptcy. On this basis alone, the Court need not delay long with Defendants' arguments.

Second, even if the Court considers Defendants' lack of standing arguments on the merits, Defendants are wrong because (as they well know but have apparently failed to advise the Court) Plaintiffs have undertaken to remediate any alleged failure to list the monetary claims as bankruptcy assets by petitioning the bankruptcy court to reopen the Yacks' bankruptcy case. The bankruptcy court has agreed to do so and, by Order dated April 28, 2008, the Yacks' bankruptcy case was reopened for the express purpose of having the Trustee consider whether the bankruptcy estate wishes to pursue the Yacks' claims in this case. The Yacks filed a Motion to Request the estate's Abandonment of the Yacks' Claims pursuant to Bankrupcty Rule 6007, and a hearing is scheduled on the matter for June 10, 2008. Given the *de minimus* size of any potential monetary recovery and substantial costs of litigating this matter, the Trustee predictably has indicated that it has no desire to proceed with these claims on behalf of the estate.

Finally, the bankruptcy court's decision to reopen the Yacks' bankruptcy case addresses any concerns based on judicial estoppel. The bankruptcy court has the opportunity to retain the claims rather than abandon them, thus preventing the Yacks from obtaining any possible

---

[1] The Sheriff's Department also has brought a separate motion to dismiss on grounds unique to public entities, such as failure to allege a practice and policy and administrative exhaustion. Plaintiffs address these assertions in a separate opposition filed concurrently.

- 2 -

1  advantage from inadvertently failing to schedule the claims.  This procedure defeats any
2  arguments based on judicial estoppel.
3  Defendants' motion to dismiss is meritless.

## II.     BACKGROUND FACTS

Martin and Helen Yack are a retired couple whose sole income comes from Social Security and a small pension from Mr. Yack's former job as a painter.  (Amended Complaint, ¶¶ 24-25, 28) Since 2000, both Mr. and Mrs. Yack have repeatedly been hospitalized for conditions associated with cancer and heart disease.  (Amended Complaint, ¶¶ 29-30)  Unable to pay their medical bills, the Yacks filed for bankruptcy on July 20, 2007.

The Yacks were represented in bankruptcy by Theodore Olson, a retired attorney who was representing the Yacks pro bono.[2]  (Motion to Request Abandonment ("Motion to Abandon") annexed as Exh. B to the Request for Judicial Notice ("Judicial Notice Request") dated May 28, 2008, at ¶4).  Mr. Olson met with the Yacks, helping them to prepare the schedule of assets and liabilities accompanying their Bankruptcy Petition. (Exh. A to Judicial Notice Request, ¶5)

Nine months before their bankruptcy, in November 2006, the Clerk's Office for Butte County, California issued a Writ of Execution on behalf of Sunlan, who is believed to have been assigned the debt owed by the Yacks to the medical providers, and who had obtained a judgment on that debt.   After obtaining the Writ of Execution, Sunlan delivered the Writ to the Sheriff's Department.  (Amended Complaint, ¶¶ 33-34)

On or about November 17, 2006, the Sheriff's Department served a Notice of Levy on WaMu, where the Yacks' had a checking account.  After receiving the Notice of Levy, WaMu immediately froze the Yacks' account, withdrew the $312 remaining, and transferred it to the Sheriff Department. (Amended Complaint, ¶35-36)

---

[2] Mr. Olson was first admitted to practice law in California in 1949.

- 3 -

1  The Yacks immediately advised WaMu that the money in the account came from social
2  security and a pension and thus was exempt from attachment, execution or legal process under
3  42 U.S.C. §407 and Cal. Code of Civil Procedure §704.080. (Amended Complaint, ¶44)
4  Despite this, the money remained frozen through at least November 28, 2006, and it was not
5  until February 15, 2007 that the Superior Court in Butte County finally determined that the $312
6  in the account was statutorily exempt and not subject to execution. (Amended Complaint, ¶50)
7  At the time they filed for bankruptcy, Mr. Olson was not aware that $312 in the Yacks'
8  checking account had been frozen some nine months before, much less that they might have a
9  potential cause of action for violation of 42 U.S.C. §407 and Cal. Code of Civil Procedure
10  §704.080. (Exh. B to Request for Judicial Notice, ¶10) In any event, even if Mr. Olson had
11  been aware that a potential cause of action existed, the $312.00 in the Yack's account was
12  eventually returned. (Amended Complaint, ¶50)

13  On November 19, 2007, the Yacks filed a pro se complaint in this court against Sunlan,
14  WaMu, the Sheriff's Department, and the Butte County Clerk's Office based on the freezing of
15  their bank account at WaMu. On March 6, 2008, the Yacks' newly-retained California counsel
16  filed an Amended Complaint on their behalf, seeking certification of a class of senior citizens
17  who have had Social Security benefits frozen or restricted in violation of 42 U.S.C. §407 and
18  Cal. Code of Civil Procedure §704.080. The Yacks seek declaratory, injunctive and monetary
19  relief against the defendants based on the alleged violation of federal and California statutes
20  governing the method by which statutorily exempt funds are to be treated.

21  After the Defendants raised the fact that the Yacks had not disclosed these prospective
22  claims in the bankruptcy proceeding, counsel for the Yacks in this proceeding contacted Tom
23  Olson (the Yacks pro bono bankruptcy counsel) and advised him of the action filed in federal
24  district court. (Exh. B to Request For Judicial Notice, ¶14) Mr. Olson promptly moved to
25  reopen the bankruptcy matter, which had been closed on November 16, 2007. By Order dated
26  April 28, 2008, the bankruptcy court reopened the Chapter 7 case "for the purpose of
27  determining whether the estate should be substituted for the debtors" in the action pending in
28

- 4 -

San Francisco. (A copy of the Order Reopening the Bankruptcy is appended to the Request for Judicial Notice as Exh. A)

On May 10, 2008, Mr. Olson filed a Motion to Request Abandonment of the Yack's claims in this action pursuant to Rule 6007 of the Federal Bankrupcty Rules.  On May 27, 2008, the bankruptcy trustee advised Mr. Olson that he did not object to the abandonment of the pending claims to the Yacks.  (Letter annexed as Exh. A to the Declaration of Paul Grobman dated May 28, 2008)

**III.   ARGUMENT**

      **A.   Even If The Yacks Were Estopped From Maintaining The Damages Claims, The Claims For Declaratory And Injunctive Relief Would Proceed.**

Initially, Defendants' standing arguments do not reach the Yacks' claims for declaratory and injunctive relief.  Therefore, even if it could be determined that the Yacks deliberately hid potential damage causes of action from the bankruptcy court and trustee (which they did not), their claims for declaratory and injunctive relief would still go forward.

In <u>Barger v. City of Cartersville, Georgia</u>, 348 F.3d 1289, 1297 (11th Cir. 2003), the court that – though the plaintiff's failure to schedule his employment discrimination claim estopped him from bringing a claim for monetary damages – it had no affect on his claims for declaratory or injunctive relief.  As the <u>Barger</u> court stated:

> [K]nowledge that the debtor was pursuing a discrimination claim seeking injunctive relief that offered no monetary value to the estate, would not, in all likelihood, have changed the bankruptcy court's determination about how to proceed with the debtor's bankruptcy. . . .The trustee and the creditors are interested in the debtor's property that can add anything of value to the estate. We conclude that [plaintiff's] undisclosed claim for injunctive relief offered nothing of value to the estate and was of no consequence to the trustee or the creditors.  We decide then, that the important and necessary reasons that bar [plaintiff's] monetary claims do not affect his efforts to change, through injunctive relief, [defendant's] employment practices.  He may pursue his claims for injunctive relief.

348 F.3d at 1297.

The same conclusion applies here.  Even if the court could conclude that the Yacks

■ 5 -

intentionally hid their claims for monetary relief from the bankruptcy court, the claims seeking injunctive and declaratory relief "offered nothing of value to the estate" and thus should be allowed to go forward.

### B. The Bankruptcy Trustee Will Likely Abandon The Yacks' Claims Anyway.

In any event, Defendants' arguments fail because the bankruptcy court has reopened the Yacks' bankruptcy case and the Trustee will predictably abandon the claims. Defendants in their motion to dismiss have omitted to inform the Court about an important material fact – namely, that as of the time of the filing of their motion, the bankruptcy court had reopened the Yacks' bankruptcy for the specific purpose of having the trustee consider the pending claims. Moreover, after considering the Yacks' causes of action herein, the Trustee has indicated that he intends to abandon the pending claims to the Yacks. (Exh. A to Grobman Declaration)

While debtors in bankruptcy have an obligation to carefully schedule all of their assets, in cases where a debtor has inadvertently omitted a prospective cause of action from a schedule of assets, the Ninth Circuit considers a subsequent consideration and abandonment of that claim by the trustee as a ratification of the former debtor's right to proceed.

Thus, in <u>Dunmore v. U.S.</u>, 358 F.3d 1107 (9th Cir. 2004), a debtor failed to schedule a claim for a tax refund on his schedules in a prior bankruptcy which ended in the discharge of the plaintiff's debt. When the former debtor subsequently brought those tax claims against the government in federal district court, the government argued that, as a matter of law, the plaintiff was precluded from bringing the claims by his failure to schedule them during the bankruptcy. Both the district court and this circuit rejected this argument, finding that the plaintiff was permitted to subsequently "obtain the real party in interest's [the trustee's] ratification to proceed with the refund causes of action." <u>Dunmore</u>, 358 F.3d at 1112.

According to the <u>Dunmore</u> court, once the bankruptcy trustee abandoned the tax claims after the bankruptcy case was reopened, that constituted "the estate's ratification of [plaintiff's] lawsuit", which "had the same effect as if the estate itself had originally commenced the action, so long as [plaintiff's] decision to sue in his own name represented an understandable mistake

■ - 6 -

1   and not a strategic decision." Dunmore, 358 F.3d at 1112.

2   In subsequent decisions, this circuit has reaffirmed that "if a bankruptcy petitioner were
3   to make an 'understandable' mistake in suing in his own name" after failing to schedule a
4   prospective cause of action, he can pursue the claim if the trustee "were to ratify his actions" by
5   subsequently abandoning the claim. Turner v. Cook, 362 F.3d 1219, 1226 (9th Cir. 2004);
6   Walton v. Allstate Ins. Co., 2007 U.S. App. Lexis 756 (9th Cir. 2007) (unpublished) (though
7   plaintiff failed to schedule claim it was now bringing in a pending bankruptcy proceeding, court
8   remanded to district court to allow the bankruptcy court to "determine whether the trustee of the
9   [plaintiff's] estate wishes to abandon or assert the claim on behalf of the estate")[3]. See also
10  Lopez v. Specialty Restaurants Corp., 283. B.R. 22 (9th Circ B.A.P. 2002) (in reversing
11  bankruptcy court's refusal to reopen case to allow Trustee to consider a previously undisclosed
12  claim, the court stated that the trustee should "investigate whether the action has value, and then
13  prosecute it, settle it, abandon it, or arrange for [the former debtor] to prosecute it in exchange
14  for the estate receiving a share of the proceeds").

15  That is precisely what is happening here. The trustee has now considered the claims in
16  the pending action, has determined that they would be of inconsequential value, and has
17  therefore determined not to bring them on behalf of the estate. Thus, unlike the situation in
18  Cusano v. Gene Klein, 264 F.3d 936 (9th Cir. 2001), where the bankruptcy court refused to
19  reopen the bankruptcy to allow the trustee to consider the claims at issue, the bankruptcy here
20  has been reopened and *the trustee has indicated his intention to release the Yacks' claims*.
21  Having been abandoned by the trustee, the claims at issue are the property of the Yacks, who
22  clearly have standing to bring them.

---

27  [3] Pursuant to Ninth Circuit rules, a copy of Walton v. Allstate Ins. Co., 2007 U.S. App. Lexis 756 (9th Cir. 2007) is annexed hereto.

■ 7 -

OPPOSITION TO MOTION TO DISMISS FOR LACK OF STANDING
CASE NO. 07-5858-PJH

### 1. The Yacks' Failure To Schedule These Claims Was Completely Inadvertent.

The only remaining question, then, is whether the Yacks' failure to include these causes of action in its schedule of assets "represented an understandable mistake and not a strategic decision." Dunmore, 358 F.3d at 1112.

While Defendants have yet to argue that the Yacks deliberately tried to hide these causes of action from the bankruptcy court, the Yacks anticipate that they will attempt to do so in an effort to avoid any consideration of the claims on the merits. Try as they might, however, Defendants will be hard-pressed to articulate any reason why – even if the Yacks' claims herein had already been made at the time of their bankruptcy – the Yacks would have had any motivation to deliberately hide them from the bankruptcy court.

As the Trustee's indication of abandonment demonstrates, this case presents little likelihood of any potential windfall for the Yacks. Since the $312.00 in funds frozen by the Defendants were ultimately returned to the Yacks, their out-of-pocket monetary damages consist largely of incidental expenses incurred by them during the period in which their access to the frozen funds was denied.[4]

For the same reason, the Yacks could gain little monetary benefit from the declaratory and injunctive relief sought in the Complaint. Moreover, since claims for injunctive relief offer no monetary value to the estate, even a sophisticated claimant would have no reason to believe that the estate would have any interest in bringing those claims on its own. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir. 2002).

Clearly, then, the Yacks had no rational reason to deliberately omit these claims from the schedule of assets filed in the bankruptcy court in 2007. Far from a "strategic decision", the Yacks' failure to list what were then only potential causes of action was an inadvertent mistake

---

[4] In any event, even if the funds in the account had not been returned, the social security benefits in the Yacks' bank account qualify as exempt property under 11 U.S.C. §522(d)(10)(A) which would not be subject to the claims of creditors. In re Hegel, 184 B.R. 793, 796-97 (9th Cir. B.A.P. 1995)

- 8 -

OPPOSITION TO MOTION TO DISMISS FOR LACK OF STANDING
CASE NO. 07-5858-PJH

resulting from ignorance of the bankruptcy reporting requirements with regard to prospective causes of action and uncertainty about whether they intended to bring these claims.   .

### C.    Reopening The Bankruptcy Case Conclusively Addresses Any Judicial Estoppel.

Finally, Defendants argue that the Yacks are in any event judicially estopped from asserting their claims because of their failure to schedule them.  Again, however, the Ninth Circuit's decision in <u>Dunmore</u> rejected judicial estoppel under identical circumstances.

Because the bankruptcy court has reopened the Yacks' case to consider the claims, the Yacks can gain no unfair advantage from their alleged failure to schedule: the bankruptcy Trustee has the opportunity to  choose to retain the claims rather than retain them.  This "approach [is] a permissible alternative to judicial estoppel that prevent[s the Yacks] from deriving an unfair advantage if not estopped. [citation omitted]." *Dunmore*, 358 F.3d 1113 n 3.

## IV.    CONCLUSION

Based on the foregoing, the Court should deny Defendants' motion to dismiss for lack of standing.

Dated: March 28, 2008

                                          DEAN D. PAIK
                                          COHEN & PAIK LLP

                                          PAUL S. GROBMAN

                            By       /s/ Dean D. Paik
                                       DEAN D. PAIK

                              Attorneys for HELEN and MARTIN YACK on behalf of themselves and all others similarly situated

■  9 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

17067956.1

OPPOSITION TO MOTION TO DISMISS FOR LACK OF STANDING
CASE NO. 07-5858-PJH

**REMINDER: THROW THIS PAGE AWAY IF PRINTED!**

On the **RED** line below, type in the abbreviated title of document. This title will be referenced in all the footers throughout the pleading:

CHEVRON CORPORATION'S RESPONSE TO PLAINTIFFS' SPECIAL INTERROGATORIES (SET ONE)

**DO** **NOT** **DELETE** **THIS** **PAGE** or your abbreviated pleading title will disappear throughout your document.