FILED
May 28, 2008
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0001236191

**11**

ADAM A. LEWIS (BAR NO. 88736)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
alewis@mofo.com

Attorneys for Respondent
WASHINGTON MUTUAL BANK

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re

HELEN YACK and MARTIN YACK,

    Debtors.

Case No.   07-25642-C-7

Chapter   7

DC. No.   TWO-3

WASHINGTON MUTUAL'S OPPOSITION TO THE DEBTORS' MOTION TO REQUEST ABANDONMENT

Date:   June 10, 2008
Time:   9:30 a.m.
Place:  United States Bankruptcy Court
        Eastern District of California
        501 I Street, 6th Floor,
        Ctrm 35, Department C
        Sacramento, CA

1  Washington Mutual Bank ("Washington Mutual") opposes the Motion to Request Abandonment Pursuant to Bankruptcy Rule 6007 (the "Motion") of chapter 7 debtors Helen Yack and Martin Yack (the "Debtors"). The Debtors engaged in misconduct in this Case by failing to schedule in their petition an unliquidated claim – based on events that were concluded many months prepetition – upon which they filed suit three days after the discharge order was entered here. The unliquidated claim was not one that could have escaped the Debtors' notice – several months before the petition was filed, the supposed claim was the subject of a front page story in the Wall Street Journal.

The Debtors have also engaged in misconduct in their Northern District of California suit (the "Action"). While the Debtors claimed in their complaint to be unrepresented by counsel, the Debtors have recently acknowledged, through counsel, that the complaint was written by a New York lawyer who is not admitted in California, and who arranged for the filing of the complaint. That complaint *must* have been prepared in advance of the closing of the Case, since it was filed only three days later. What is more, the Debtors have violated Fed. R. Civ. Proc. 11 by asserting in the Action claims that they no longer own.

It is clear that the Debtors: (1) knew about their alleged claims against Washington Mutual long before this Court closed this Case (indeed, long before they even filed the case); (2) failed to schedule the claims before the Court closed the Case; (3) deliberately waited with their secret, unadmitted counsel until just after the Case was closed to commence the Action; (4) and even then did not disclose the claims to the Trustee, the Court or creditors until Washington Mutual caught them in their subterfuge red-handed by challenging their standing to bring the Action.

Under these circumstances, approving the Debtors' request to require their trustee, Michael D'Aquisto (the "Trustee"), to abandon their previously-unscheduled alleged claims would implicitly approve of misconduct by both the Debtors and their counsel in the Action. Such approval would reward Debtors for their dishonesty, and would also encourage others to conceal assets in their bankruptcy proceedings: if caught, a debtor could simply ask with impunity

WASH. MUTUAL'S OPP. TO DEBTORS'
MO. RE: ABANDONMENT
sf-2521053

2

1  to have the hidden asset abandoned, Washington Mutual therefore respectfully requests that the
2  Debtors' motion be denied.
3      Indeed, Washington Mutual suggests, the Court should consider vacating its order
4  granting the Debtors' recent motion to reopen the case. Doing so will not harm creditors because,
5  as Washington Mutual will explain, the underlying alleged claims against it have virtually no
6  monetary value, as the Debtors themselves admit in their Motion.

7                                **BACKGROUND**

8      The claims against Washington Mutual in the Action are based on events that occurred
9  between November 17, 2006 and February 15, 2007, long before the Debtors filed this chapter 7
10 case (the "Case") on July 20, 2007. (*See* Amended Complaint ¶¶ 23-51). Debtor Helen Yack
11 defaulted on a credit card debt. According to the amended complaint in the Action, Ms. Yack's
12 credit card issuer enlisted a third-party debt collector, Sunlan-020105, a co-defendant with
13 Washington Mutual in the Action, to recover the unpaid account balance. Sunlan obtained a
14 judgment against Ms. Yack for approximately $10,000 in Butte County Superior Court. A writ of
15 execution was issued by that court to the Sheriff's Office for the County of Los Angeles.
16 Pursuant to the writ, a notice of levy was mailed to Washington Mutual, where Ms. Yack and her
17 husband Martin Yack held a joint checking account. The Debtors allege in the Action that
18 Washington Mutual froze their account, collected a legal process fee of $75, withdrew the amount
19 remaining in the account ($237) and delivered the funds to the Sheriff. (Motion, Amended
20 Complaint, at ¶¶ 31–37.) The Debtors complain that defendants in varying ways thereby violated
21 several federal and state statutes related to debt-collection practices in connection with the
22 attempted execution of the judgment in favor of Sunlan. The Debtors also claim that the funds in
23 their joint checking account consisted of Social Security direct deposits and pension benefits
24 exempt from levy but that they were still denied use of these funds for three months. (*See id.* ¶¶
25 3, 40–50.)
26     Long after those alleged events, on July 20, 2007 the Debtors filed their voluntary
27 chapter 7 petition before this Court. The claims the Debtors now allege in the Action based on
28 facts that predated the filing of the Case appear nowhere on their Schedule B of personal

property. Indeed, where the Debtors were required to list contingent and unliquidated claims, the Debtors listed nothing, and instead checked the box, "NONE," representing to this Court, the Trustee and their creditors that they had no such claims. This Court granted the Debtors' discharge, and on November 16, 2007 it closed the Case.

*Just three days* later, on November 19, 2007, the Debtors filed their original complaint in the action, purportedly *in pro per*. The original complaint is 71 paragraphs long, contains seven causes of action and class action allegations, and appears on its face to be the work of someone with legal training. Had the complaint in fact been written by the Debtors, an elderly couple in bad health, one of whom is a retired painter, it would have been quite an impressive feat. But as the Debtors' counsel in the Action have since admitted, (McCabe Decl. Ex. A at 2:11-12), the Debtors did not draft the complaint in the Action. The original complaint in the Action was written by Paul Grobman, a New York lawyer not admitted in California who seems to have exempted himself from the Northern District's *pro hac vice* requirements by simply concealing his role in the case. The PACER copy of the original complaint in the Action – which was filed by fax – shows in its header Mr. Grobman's fax number. (*Compare* McCabe Decl. ¶ 6, Ex. B *with* Motion, Amended Complaint, caption page (showing that Mr. Grobman's fax number on the latter is the same as the fax legend on the former).) Moreover, the amended complaint in the Action, in which Mr. Grobman finally listed himself as counsel, differs very little from the original complaint: it has 78 paragraphs, and contains seven causes of action and class allegations.

The Debtors cannot credibly contend that for the entire four months the Case was pending, they were unaware of the claims they now assert in the Action. It cannot be the case that in the three days between the discharge order and the filing of the Action, (a) the Debtors realized for the first time that they had claims against the defendants they allege in the Action, (b) the Debtors located a lawyer on the other side of the country to consult about those claims, (c) the Debtors provided that lawyer with background information, (d) Mr. Grobman conducted the inquiry into those facts required by Rule 11, and (e) Mr. Grobman drafted and filed a coherent complaint on the Debtors' behalf, complete with class allegations. The Debtors therefore must have been

WASH. MUTUAL'S OPP. TO DEBTORS'
MO. RE: ABANDONMENT
sf-2521053

4

1  aware of the unliquidated claim for at least a material time in which the Case was open.
2  However, with the support of their current litigation counsel in the Action, the Debtors continued
3  to conceal the claim lest the Debtors have to share any proceeds of the claim with their creditors,
4  and lest the Debtors' counsel in the Action have to deal with the Trustee: the claim once held by
5  the Debtors had little value *to the Debtors or to the estate* as an individual claim. However, as a
6  potential basis for a class action suit, the claim represented significant leverage for *Mr.*
7  *Grobman's* recovery of attorneys' fees even in connection with an early settlement, and for the
8  Debtors' recovery of "service payments" for acting as class representatives. *See also* the
9  Amended Complaint, Prayer (seeking punitive and statutory damages). By continuing to conceal
10 the claim until the discharge order was entered, the Debtors and their counsel in the Action
11 avoided the risk that the Trustee might deprive them of a litigating vehicle by settling the claim
12 on behalf of the estate, and making a distribution to the Debtors' creditors.
13       The Motion made here was prompted by the objection of the defendants in the Action to
14 the fact that the Debtors there asserted claims they did not own. On March 6, 2008, attorney
15 Dean Paik, of San Francisco, and Mr. Grobman filed the operative amended complaint on behalf
16 of Debtors. (Motion, Amended Complaint.)[1] On April 2, 2008, James McCabe, counsel in the
17 Action for Washington Mutual, spoke by telephone with Mr. Paik and advised him that since the
18 Debtors had filed a petition in bankruptcy after the events underlying this suit had occurred, but
19 had not listed in their petition any claim against Washington Mutual, the Debtors lacked standing
20 to prosecute the Action because the Trustee still controls the claims. (McCabe Decl. ¶ 7.)
21       On April 3, 2008, Mr. McCabe provided Mr. Paik with email copies of the Debtors'
22 bankruptcy petition and discharge order establishing that any claim Plaintiffs may once have had
23 against Washington Mutual was no longer "their" claim — by filing for bankruptcy, Plaintiffs
24 transferred the claim to the bankruptcy trustee. (McCabe Decl. ¶ 7.) At that time, Mr. McCabe
25
26 _____
27 [1] The preceding facts belie the Debtors' claim in their Motion here that they filed the amended complaint through "newly retained" counsel. (Motion ¶ 13.)
28

WASH. MUTUAL'S OPP. TO DEBTORS'
MO. RE: ABANDONMENT                    5
sf-2521053

1   also provided Mr. Paik with applicable legal authorities showing that Plaintiffs lack standing.  Mr.
2   Paik declined to dismiss the complaint.  (McCabe Decl. ¶ 7.)
3       On April 17, 2008, Mr. McCabe spoke by telephone with Mr. Paik and renewed
4   Washington Mutual's request that Plaintiffs dismiss the complaint.  Mr. Paik again declined to do
5   so.  (McCabe Decl. ¶ 8.)  Instead, tacitly conceding that they need to acquire ownership of the
6   claim in order to continue to maintain the Action, the Debtors on April 23, 2008 moved to reopen
7   this Case and to seek reappointment of the Trustee.[2]  The Court reopened the Case on April 28,
8   2008, whereupon the Debtors filed this Motion.

9                                   **THE MOTION**
10      The Debtors seek by this motion to regain control of the Action, and to do so before any
11  interested party had a chance to focus on what has happened, for barely had the Trustee been
12  reappointed on April 28 than just two weeks later – before the Trustee has had a chance to
13  evaluate the Action – did the Debtors make the Motion seeking to force abandonment of the
14  claims and Action to them.[3]
15      In the Motion, the Debtors try to portray themselves as innocents who overlooked to
16  schedule the claims.  Thus, they prominently mention that they are retired, ill, living on a meager
17  income, and relying on *pro bono* counsel to handle the Case.[4]  (Motion ¶¶ 3-5.)  They also try to
18  minimize the value of the Action by noting that it is in part for nonmonetary relief and that their
19  actual damages (if any) are not "of any significant consequence" and "minimal."  (Motion ¶¶ 10,

---

[2] As the related proof of service indicates, the Debtors purported to serve Washington Mutual by mail on May 12, 2008 at a lock box address in Seattle.  Hence, even if service on a lockbox address is good service, the Debtors should have given Washington Mutual 31 days' notice rather than the 29 days' they did.  *See* Local Bankruptcy Rule 9014-1(f)(1) (28 days' minimum notice); Fed. R. Bankr. Proc. 9006(f) (three days' additional notice by mail).

[3] For the sake of decorum, the Debtors ask alternatively that the Trustee be "direct[ed]" to prosecute the Action if he chooses to retain the claims. (Motion 3.)  But, of course, that is not what the Debtors really want; rather, they want the Action and Claims abandoned to them.  Nor should the Court tell the Trustee what to do with the Action.

[4] Washington Mutual does not mean to minimize the financial or health problems the Debtors may be facing.  What the Debtors describe in the Motion is certainly a sad situation.  But that is no excuse for their defrauding their creditors and abusing the bankruptcy process whose purpose is to help deserving people in just such circumstances.

15.) Finally, the Debtors claim that although they were front page news for the claims in a major national newspaper several months before they filed the Case, (Motion ¶ 8), they "were not *contemplating* any action against . . . [Washington Mutual] . . . and had not *retained* an attorney." (Motion ¶ 9 (emphasis added).) Of course, though it is evident from the complaints in the action, included the amended complaint attached to the Motion, the Debtors *are* seeking to be representative plaintiffs in a class action that also seeks statutory and punitive damages. (Motion, Amended Complaint, Prayer ¶ (ii), at 15.) In short, contrary to how they try to portray the claims in the Motion, in their view, at least, the claims and Action are *very* valuable, not only to them but also to the lawyers who seek to be appointed class counsel in the Action. Why else would Debtors bother to prosecute those claims and, only when forced, seek to reopen the Case to actually gain standing to bring them? Washington Mutual believes that the Action actually has little value, if any, to the estate (or the Debtors and their class action counsel).[5] But the issue on this Motion is not so much whether the claims have any value, but whether the Debtors have been candid with the Court, the Trustee and their creditors both when they filed the Case and now when they seek abandonment of the claims based upon their portrayal of the underlying circumstances and the value of the claims.

  Nor does the Debtors' equivocation about the origins of this situation end with the value of the claims and Action. As emphasized above, they very carefully say they did not *retain* an attorney regarding the claims before they filed the Case, but they do not say that they did not *consult* one about them. Similarly, they say that they did not *contemplate* suing Washington

---

[5] Should the Action be litigated, the Debtors' allegations will be shown to be misleading at best, and false at worst. Washington Mutual will be able to show as follows: on receipt from the Sheriff of a notice of levy on November 20, 2006, the bank froze the balance in the Debtors' account, but delivered no funds to the Sheriff. Instead, the bank provided the Sheriff with notice that since the account was jointly held by a non-debtor (Mr. Yack), it would not deliver funds until the Sheriff had completed a statutory procedure notifying Mr. Yack of the levy. Eight days later, Washington Mutual revised its notice to the Sheriff, stating that all funds in the account were exempt from levy. The bank explained that since the account contained Social Security direct deposits, and the balance was below the automatic exemption threshold provided by California Code of Civil Procedure Section 704.080, the bank would not deliver any property to the Sheriff. Washington Mutual will prove that the freeze on the Debtors' account was lifted on the same day, November 28, and that all funds — including the legal process fee — were credited back to the account at that time.

1  Mutual before they filed the Case, but (even if that is true) they do not say that they were
2  *unaware* of the possible claims in a manner sufficient to require them to include the claims on
3  their Schedule B. Notably, the Debtors provide no evidence, let alone *sworn* evidence for any of
4  their contentions why the Action should be abandoned to them as being burdensome to their
5  estate.

## ARGUMENT

When a debtor fails to schedule an asset such as a claim but then tries to sue on it after his bankruptcy is concluded, he lacks standing to prosecute the action personally since the action still belongs to his bankruptcy estate. *Cusano v. Klein*, 264 F.3d 936, 947-48 (9th Cir. 2001); *see also Cheng v. K&S Diversified Investments, Inc. (In re Cheng)*, 308 B.R. 448, 461 (B.A.P. 9th Cir. 2004). Moreover, it also is appropriate to apply the remedy of judicial estoppel to prevent him from benefiting from his dishonesty with the court, his trustee and his creditors through his having taken inconsistent positions judicially. *Hamilton v. State Farm Fire & Cas. Corp.*, 270 F.3d 778, 782-85 (9th Cir. 1999); *Cheng*, 308 B.R. at 452-53. However, the court considering the application of the doctrine must avoid harming bystanders such as the dishonest debtor's creditors through depriving them of the possibility of recovering on their claims against the debtor through the estate's possible recovery on the unscheduled claims. *Cheng*, 308 B.R. at 458-61. When such a chapter 7 bankruptcy case is closed before the debtor's omission is discovered, the appropriate remedy is for the court to reopen the case to let the trustee decide whether to prosecute or otherwise dispose of the claim for the benefit of the debtor's creditors. *See Cheng*, 308 B.R. at 460.[6] At the same time, the court may consider what to do with the claim vis-à-vis the dishonest debtor's opportunity to profit from it personally.

---

[6] However, reopening the case is not required when the claim demonstrably is futile. "Where the chance of any substantial recovery for creditors appears 'too remote to make the effort worth the risk,' a trial court does not abuse its discretion in denying a motion to reopen." *In re Herzig*, 96 B.R. 264, 266 (B.A.P. 9th Cir. 1989) (citation omitted); *In re Lopez*, 283 B.R. 22, 27 (B.A.P. 9th Cir. 2002); *see also In re Walker*, 198 B.R. 476, 479, 481 (Bankr. E.D. Va. 1996). That perhaps would be the case here since the Debtors purport to value the claim monetarily at just over $300 and, as Washington Mutual has noted, *supra* n.5, the claims lacks merit. However, since the Debtors moved *ex parte* to reopen the Case, the Court was denied input from the creditors – including some of the defendants in the Action – as to the actual value of the claim to permit it to undertake the analysis under *Herzig*. Once the Case *has been* reopened, the question
(Footnote continues on next page.)

> The efficacy of the bankruptcy system depends in important respects on accurate self-reporting by debtors. Debtors . . . who do not fulfill their obligations deserve to be chastised severely.

*Cheng*, 308 B.R. at 458. And, as one case has held, reopening a case to schedule an improperly omitted claim and then closing the case does not work an abandonment of the claim to the debtor if the trustee chooses not to pursue the claim since that sequence of events does not "cure" the debtor's misconduct. *Grauper v. Town of Brookfield*, 450 F. Supp.2d 119, 125 (D. Mass. 2006).

Here, it is clear from the evidence[7] that the Debtors deliberately failed to schedule their potential claims against Washington Mutual at one or more points in the pendency of the Case. That intent can be inferred from the following facts: Debtors told the story of their claim to the Wall Street Journal before filing the petition; Debtors failed to schedule the potential claim; before the Case was closed, Debtors worked with counsel to assert the potential claim; Debtors filed the Action within days of entry of the discharge order; and on this Motion, Debtors have understated the remedies sought in the Action. As explained above, Debtors clearly had a motive to conceal the claims from the Trustee. Debtors therefore cannot establish that their failure to schedule the claims was inadvertent. *See, e.g., Superior Crewboats, Inc. v. Primary P&I Underwriters*, 374 F.3d 330, 336 (5th Cir. 2004); *Barger v. City of Cartersville*, 348 F.3d 1289, 1294 (11th Cir 2003).

All Debtors say about their failure to schedule the claim is that they had not retained counsel and did not "contemplate" bringing the Action prepetition. But that does not mean that they did not know about the alleged claims. Moreover, as Washington Mutual observed earlier, in the Motion they carefully steer around saying that they did not *consult* with counsel prepetition or at some point during the Case (when they still could and should have scheduled the claims) or saying that they did not know that they might bring the Action some day. While they downplay

---

(Footnote continued from previous page.)

of *whether* to reopen is moot. However, in light of the facts laid out here, the Court might consider vacating on its own motion its order reopening the Case.

[7] The only evidence adduced on this Motion is that submitted by Washington Mutual. Since the Debtors failed to include any competent evidence in support of their Motion, that Motion should be denied outright for violation of Local Bankruptcy Rule 9014-1(d)(6).

WASH. MUTUAL'S OPP. TO DEBTORS'
MO. RE: ABANDONMENT
sf-2521053

9

1  the value of the Action to the estate, the Debtors have failed on this Motion to call the Court's
2  attention to their claims for statutory and punitive damages or their interest in serving as class
3  plaintiffs. In that regard, they argue that because the Action is "principally" one for injunctive
4  and declaratory relief, which have no value to the estate, the Court should order abandonment of
5  the *entire* Action to them, *including the monetary claims*. (Motion 5.) If the Debtors really
6  thought the Action had nominal monetary value and were only interested in vindicating their
7  rights through an injunction, they would not need to reacquire from the Trustee the monetary
8  claims.

9  The Debtors' anxiety to retain control of the monetary claims, however nominal the
10 Debtors claim their value to be, is underscored by their misrepresentation of the holding of
11 *Barger*. As they explain the case, it holds that their failure to schedule the claims is of no
12 consequence if the relief they seek "would be (and in fact is) *principally* for injunctive and
13 declaratory relief." (Motion 5 (emphasis added).) But that is *not* what *Barger* says. Rather, it
14 expressly holds that the debtor in the case was barred from bringing the associated monetary
15 claim because the debtor misrepresented its value as nominal at the first meeting of creditors.
16 Nor does the case hold that a debtor may pursue a declaratory relief claim in private without
17 harming the estate. There was, in fact, no declaratory relief claim even mentioned in the
18 opinion.[8] By the same token, *Parker v. Wendy's Int'l*, 365 F.3d 1268, 1272 n.4 (11th Cir. 2004),
19 cited by the Debtors as further authority for their contention that they may retain control of
20 injunctive and declaratory relief claims even if they did not disclose them, does not involve
21 declaratory relief claims at all and addresses injunctive relief only hypothetically and only in
22 dictum without any reasoning. Neither of the two cases holds that the Debtors may pursue any
23 associated monetary claims that they concealed, regardless of whether injunctive relief
24 predominates.

---

25 [8] Nor would one expect any such analysis of declaratory relief claims. While a claim for injunctive relief in favor of the debtors *may* have no monetary value to the estate (but, consider,
26 e.g., a claim for injunctive relief to prevent interference with a chapter 11 business), claims for declaratory relief can in that a judgment on them may lead to the assertion of *res judicata* or
27 collateral estoppel on monetary claims later.

28

WASH. MUTUAL'S OPP. TO DEBTORS'
MO. RE: ABANDONMENT                           10
sf-2521053

**CONCLUSION**

In summary, although the Court perhaps should permit the Trustee to decide what to do with the Action (and Washington Mutual may well be willing to settle with him for a sum that will satisfy the Debtors' creditors),[9] the Court should in no event permit the Debtors to obtain or retain control of any claims that might result in monetary benefits to them personally. They have "played fast and loose" with the Court, the Trustee and their creditors for their exclusive private benefit. *Hamilton*, 270 F.3d at 783. Only when their maneuvering was discovered and challenged by Washington Mutual have they come to this Court asking it to use its powers to help them do what they tried but failed to do by cheating.

Dated: May 28, 2008

ADAM A. LEWIS
MORRISON & FOERSTER LLP

By:   /s/ Adam A. Lewis
         Adam A. Lewis

Attorneys for Respondent
WASHINGTON MUTUAL BANK

---

[9] Why would Washington Mutual bother to oppose the Motion or seek to settle the claims with the Trustee if it thinks the claims are so valueless? Because sometimes it makes more sense to try to end litigation quickly than to pay the costs of even a meritorious defense. Here, the total claims of unsecured creditors according to the Debtors' Schedules E and F are only just over $35,000.