1  DEAN D. PAIK (State Bar No. 126920)
   236 West Portal Avenue, #793
2  San Francisco, CA 94127
   Telephone:    (415) 370-9810
3  Email:        dpaik@pacbell.net

4  PAUL S. GROBMAN (appearing *pro hac vice*)
   555 Fifth Avenue, 17th Floor
5  New York, New York 10017
   Telephone: 212.983.5880
6  Facsimile: 415.682.7060
   Email: grobtown@aol.com
7

8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN and MARTIN YACK on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON MUTUAL INC., SUNLAN-020105, LLC; SHERIFF'S DEPARTMENT, COUNTY OF LOS ANGELES, CALIFORNIA; CLERK'S OFFICE, COUNTY OF BUTTE, CALIFORNIA; and DOES 1-10,<br><br>Defendants. | Case No.: 07-5858-PJH<br><br>**PLAINTIFFS' AND THEIR ATTORNEYS OPPOSITION TO DEFENDANT WASHINGTON MUTUAL INC.'S MOTION FOR RULE 11 SANCTIONS**<br><br><u>Hearing</u>:<br><br>Date: July 23, 2008<br>Time: 9:00 a.m.<br>Courtroom: 3<br><br>The Honorable Phyllis J. Hamilton |

**PLAINTIFFS' HELEN AND MARTIN YACK AND ATTORNEYS' DEAN PAIK AND PAUL GROBMAN'S OPPOSITION TO DEFENDANT WASHINGTON MUTUAL INC.'S MOTION FOR RULE 11 SANCTION**

**I.    INTRODUCTION**

Plaintiffs Helen and Martin Yack ("the Yacks") and their attorneys Dean Paik and Paul Grobman submit this brief in response to the Motion for Sanctions against each which was filed by defendant Washington Mutual, Inc. ("WaMu").

In its sanctions motion, filed with this court on May 28, 2008, WaMu alleges that the Yacks, Grobman and Paik should be sanctioned because -- since the Yacks' failure to schedule

1  their pending claims in their prior July 2007 bankruptcy purportedly precluded them as a matter
2  of law from bringing this action -- the allegations in the Amended Complaint were "legally
3  frivolous," with "absolutely no chance of success under the existing precedents" or any
4  reasonable extension thereof.

5        The only thing which is sanctionable here is the filing of WaMu's palpably improper
6  motion, which necessitates this response. The Yacks' opposition to WaMu's motion to dismiss
7  for lack of standing was premised on controlling Ninth Circuit precedent which allow former
8  debtors to bring pending claims on their own behalf after failing to schedule those claims in
9  bankruptcy where the bankruptcy case is subsequently reopened and the trustee abandons those
10 claims. When they filed their opposition, the Yacks had in fact reopened their bankruptcy case
11 for the express purpose of securing the bankruptcy court's abandonment of the claims and had a
12 written commitment from the bankruptcy trustee to abandon those claims. Only WaMu's
13 behind the scenes offer of substantial sums of money to the trustee in return for his promise to
14 dishonor his commitment to the Yacks stymied their effort to defeat WaMu's motion.

15       Even if the Yacks were not justified in relying on the trustee to honor his commitment,
16 solid precedent discussed further herein supports their position that they could maintain their
17 claims for injunctive relief regardless of the outcome of their monetary damages claims. With
18 all due respect to the Court's ruling on this issue, the Yacks continue to maintain their claims
19 for injunctive relief are not barred and anticipate they may apply to the Court for leave to file a
20 motion to reconsider in order to demonstrate they are correct.

21       WaMu's motion for sanctions is simply its latest patently improper attempt to intimidate
22 the Yacks into dropping their claims. WaMu and its counsel, not the Yacks, should be
23 sanctioned.

24 **II.    FACTS**

25       As the parties have recently and extensively briefed WaMu's motion to dismiss, the
26 Yacks assume the Court has some familiarity with the dispute between the parties and review
27 only those facts relevant to WaMu's motion for sanctions.
28

■ 2 -

1  After the Defendants raised the fact that the Yacks had not disclosed these prospective
2  claims in the bankruptcy proceeding, counsel for the Yacks in this proceeding contacted Tom
3  Olson (the Yacks pro bono bankruptcy counsel) and advised him of the action filed in federal
4  district court. (Declaration of Paul Grobman In Support Of Opposition To Motion For
5  Sanctions, ("Grobman Dec.") at ¶ 2).  Mr. Olson promptly moved to reopen the bankruptcy
6  matter, which had been closed on November 16, 2007.  By Order dated April 28, 2008, the
7  bankruptcy court reopened the Chapter 7 case "for the purpose of determining whether the
8  estate should be substituted for the debtors" in the action pending in San Francisco. (Exh. A to
9  Grobman Dec.)

10  On May 10, 2008, Mr. Olson filed a Motion to Request Abandonment of the Yack's
11  claims in this action pursuant to Rule 6007 of the Federal Bankrupcty Rules. (Exh. B to
12  Grobman Dec.) On May 27, 2008, the bankruptcy trustee unequivocally advised Mr. Olson in
13  writing that he did not object to the abandonment of the pending claims to the Yacks.  (Exh. C
14  to Grobman Dec.)

15  On May 28, 2008, the Yacks filed their opposition to WaMu's motion to dismiss for lack
16  of standing.  Included as an exhibit to the Yack's opposition was the trustee's letter committing
17  to abandon the Yacks' claims.  Hours after the Yacks filed their opposition, the trustee abruptly
18  reversed his commitment to the Yacks and withdrew his abandonment.  (Exh. D to Grobman
19  Dec.)  The trustee recounted that WaMu had offered to pay the bankruptcy estate a substantial
20  sum of money if the trustee reversed his decision to abandon the Yacks' pending claims. (Exh.
21  E to Grobman Dec.)  The trustee then opposed abandonment and the bankruptcy court
22  predictably denied the Yacks motion to abandon.

**III.    ARGUMENT**

    **A.    Substantial Legal Precedent Supports The Yacks' Claims**

        **1.    The Trustee's Written Commitment To Abandon The Yacks' Claims**

Had Washington Mutual and its attorneys made a "reasonable and competent inquiry" of the law before making their Rule 11 Motion, they would have found at least three Ninth Circuit

■ 3 -

cases -- <u>Dunmore v. U.S.</u>, 358 F.3d 1107 (9th Cir. 2004), <u>Turner v. Cook</u>, 362 F.3d 1219, 1226 (9th Cir. 2004), and <u>Walton v. Allstate Ins. Co</u>., 2007 U.S. App. Lexis 756 (9th Cir. 2007) (unpublished) – each of which held that a former debtor like the Yacks may bring pending claims on their own behalf, even after they failed to schedule those claims in a prior bankruptcy, if the bankruptcy case is subsequently reopened and the trustee indicates an intent to abandon the claims. This was the same procedure the Yacks undertook after WaMu alerted them that they had failed to schedule the claims in this action.

Thus, in <u>Dunmore v. U.S.</u>, 358 F.3d 1107 (9th Cir. 2004), a debtor failed to schedule a claim for a tax refund on his schedules in a prior bankruptcy which ended in the discharge of the plaintiff's debt. When the former debtor subsequently brought those tax claims against the government in federal district court, the government argued that, as a matter of law, the plaintiff was precluded from bringing the claims by his failure to schedule them during the bankruptcy. Both this court and the Ninth Circuit rejected this argument, finding that the plaintiff was permitted to subsequently "obtain the real party in interest's [the trustee's] ratification to proceed with the refund causes of action." <u>Dunmore</u>, 358 F.3d at 1112.

According to the <u>Dunmore</u> Court, once the bankruptcy trustee abandoned the tax claims after the bankruptcy case was reopened, that constituted "the estate's ratification of [plaintiff's] lawsuit", which "had the same effect as if the estate itself had originally commenced the action, so long as [plaintiff's] decision to sue in his own name represented an understandable mistake and not a strategic decision." <u>Dunmore</u>, 358 F.3d at 1112.[1]

---

[1] Moreover, it is entirely premature on a motion to dismiss to decide whether nondisclosure constitutes an intentional "strategic decision" rather than an inadvertent mistake. "The mere failure to list [a cause of action] in the bankruptcy proceeding will not support a finding of intent" necessary for judicial estoppel. <u>Valdez v. JDR, LLC</u>, 2006 U.S. Dist. Lexis 51296, *8

*(Footnote cont'd on next page.)*

■ 4 -

1	As WaMu well knew at the time it made its Rule 11 Motion, the bankruptcy court
2	reopened the Yack bankruptcy on April 28, 2008 "for the purpose of determining whether the
3	estate should be substituted for the debtors" in the action pending in San Francisco. Exh. [] to
4	Grobman dec. Thus, it is only by recklessly ignoring the law in this Circuit and the facts of this
5	case that WaMu could make the sanctionable claim that the plaintiffs' "complaint pursues
6	claims with no reasonable basis for sustaining them."

7	Indeed, the recklessness of the accusations in WaMu's motion is further demonstrated
8	by the fact that, on May 28, 2008, WaMu was served with a copy of the Yacks' Opposition to
9	the Motion to Dismiss, which included a copy of a letter from the trustee dated May 27, 2008
10	which indicated the estate's commitment to abandon the Yacks' monetary claims so that the
11	Yacks could maintain them in this case:

> As I told you last week I have no objection to relief you sought in the motion for abandonment you filed on 5/12/08 which is set for hearing on 6/10/08. As you know my failure to file opposition 14 days before 6/10/08 precludes me from doing so at this time. I also advised you, at that time, that you could tell Judge Klein you had spoken with me about the motion and that I had no objection to it.

17	(Exh. C to Grobman Dec.).

18	After receiving the Yack's opposition papers on May 28th and realizing that the trustee's

---

*(Footnote cont'd from previous page.)*

(D. Ariz. 2006); Ryan Operations G.P. v. Santiam-Midwest, 81 F.3d 355, 364 (3rd Cir. 1996) (finding that requisite intent for judicial estoppel cannot be inferred from mere fact of nondisclosure of claim in bankruptcy); Dunmore, 358 F.3d at 1113 (in which the Ninth Circuit concluded that it could "not conclude on the present record" whether the plaintiff's failure to disclose the claim in the prior bankruptcy was a strategic decision or an inadvertent mistake)  In fact, the two cases on which the Court relies in its opinion granting WaMu's motion to dismiss -- Hamilton v. State Farm Fire & Casualty, 270 F.2d 778 (9th Cir. 2001) and Rissetto v. Plumbers & Steamfitters Local , 94 F.3d 597 (9th Cir. 1996) – were both decided on summary judgment, not a motion to dismiss.

- 5 -

commitment to abandon would allow the Yacks to bring their claims under the Ninth Circuit decision in Dunmore, WaMu immediately contacted the trustee, and apparently advised him that it was willing to pay a substantial amount of money if the trustee did not abandon the Yacks claims.  As the trustee said in his Affirmation in Opposition to the Motion to Abandon:

> The Trustee was unaware of the potential value to the estate of the asset for which abandonment is being sought, the Yacks' claim against Washington Mutual, until the afternoon of May 28, 2008, when he returned to his office . . . and listened to a message left on his answering machine from an attorney for Washington Mutual. That message stated they wanted to discuss this matter and stated they wanted to see about resolving the Yacks' claim against them with the trustee, as the representative of the bankruptcy estate. The message mentioned the amount of scheduled claims and mentioned a settlement that would result in a significant distribution to creditors.

(Exh. E to Grobman Dec., at ¶ 3).  WaMu's discussion with the trustee led to his abrupt decision to abandon his commitment to the Yacks and reverse himself on the question of abandonment, which was reflected in his May 28, 2008 letter to Tom Olson, the Yacks' bankruptcy attorney:

> I received a message this morning on my answering machine, while I was conducting 341 meetings, which leads me to believe this undisclosed asset of the Yacks may have significant value to the Chapter 7 bankruptcy estate.  If true that would be contrary to what has been represented to me thus far.[2] . . . At this time I am withdrawing my letter of 5/27/08 to you and withdrawing my consent to the proposed abandonment.

---

[2] In a submission to the bankruptcy court explaining his abrupt about-face, the trustee suggested that the Yacks had withheld the fact that "the Yacks were the class representatives in the class action." (Exh. E to Grobman Dec.) The claim is demonstrably false, as the Motion to Abandon the causes of action in this lawsuit served on the trustee on May 12, 2008 included the Amended Complaint as an exhibit.  Apparently, the trustee's assertion is based on his failure to carefully read the attached Amended Complaint, the caption of which identifies that "the Yacks were the class representatives in the class action."

■ 6 -

OPPOSITION TO MOTION FOR SANCTIONS
CASE NO. 07-5858-PJH

(Exhibit D to the Grobman Dec.)

Thus, as of the filing of the Yack's Amended Complaint, Mr. Paik and Mr. Grobman were aware of several Ninth Circuit decisions including <u>Dunmore</u> which were squarely on point, and gave them ample basis to believe that reopening the bankruptcy case would cure any standing problems with regard to the claim for monetary damages.  Moreover, this good faith basis was amply confirmed by the fact that, as of the filing of WaMu's Motion for Sanctions on May 28, 2008:

> (1) the bankruptcy proceeding had been reopened "for the purpose of determining whether the estate should be substituted for the debtors" in the action pending in San Francisco. (Exh. A to the Grobman Dec.); and

> (2) the trustee had advised the Yacks that he intended to abandon the causes of action in this litigation, allowing the Yacks to proceed forward.

***Only after*** the sanctions motion was filed -- by offering to pay the trustee a substantial sum of money far in excess of the value of the Yacks' claim -- was WaMu able to convince the trustee to dishonor his written commitment to the Yacks to abandon their claims, which ***only then*** allowed WaMu to argue that <u>Dunmore</u> and its progeny did not apply.

Under these circumstances, it is incredible – indeed sanctionable – for WaMu to claim that counsel for the Yacks did not have a reasonable basis to file the claims on the Yacks' behalf.   Had WaMu properly researched the law in the Ninth Circuit – including <u>Dunmore</u>, 358 F.3d 1107 (9th Cir. 2004) – and had it properly considered how the facts as they existed at the time they filed their motion related to <u>Dunmore</u> and its progeny, it would have realized that its Motion for Sanctions was "baseless and made without a reasonable and competent inquiry." <u>Estate of Blue v. County of Los Angeles</u>, 120 F.3d 982, 985 (9th Cir. 1997).

- 7 -

### 2. Even If The Yacks Were Precluded From Maintaining Their Damage Causes Of Action, Existing Precedent Demonstrates Their Claims For Injunctive Relief Should Go Forward.

With all due respect to the Court's ruling on WaMu's motion to dismiss, the Yacks submit that ample legal precedent supports their argument that – even if the trustee did not abandon the money damage claims – the Yacks claims for injunctive relief could still go forward.[3] Certainly, the existence of this precedent establishes a reasonable basis to oppose WaMu's motion to dismiss for lack of standing.

In Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir. 2002), the Court said that – though the plaintiff's failure to schedule his employment discrimination claim estopped him from bringing an individual claim for monetary damages – it had no affect on his claims for injunctive relief:

> [K]nowledge that the debtor was pursuing a discrimination claim seeking injunctive relief that offered no monetary value to the estate, would not, in all likelihood, have changed the bankruptcy court's determination about how to proceed with the debtor's bankruptcy. . . .The trustee and the creditors are interested in the debtor's property that can add anything of value to the estate. We conclude that [plaintiff's] undisclosed claim for injunctive relief offered nothing of value to the estate and was of no consequence to the trustee or the creditors.

348 F.3d at 1297.

Moreover, numerous other decisions hold that claims for injunctive relief may be maintained by a former bankrupt debtor, even if he or she lacks standing or is estopped from bringing a monetary damage claim as a result of failing to schedule those claims in a prior bankruptcy  In Barger v. City of Cartersville, 348 F.3d 1289 (11th Cir. 2003), for instance, the court allowed injunctive relief claims to go forward despite nondisclosure in a prior bankruptcy

---

[3] The Yacks anticipate they may seek leave of this Court to file a motion to reconsider the

*(Footnote cont'd on next page.)*

■ 8 -

because the claim "would have added nothing of value to the bankruptcy estate even if [debtor] properly disclosed it."  See also, <u>EEOC v. Merchants State Bank</u>, 2008 U.S. Dist. Lexis 37487, *5 (D.S.D. 2008) (though former debtor failed to schedule claims for injunctive relief, he "has standing in relation to obtaining injunctive relief and reinstatement" since "[t]hese interests are separate from any interest in the litigation held by the bankruptcy estate");  <u>Castillo v. Coca-Cola Bottling, Co.</u>, 2006 U.S. Dist. Lexis 32062, *11-12 (E.D. Pa. 2006) (party may continue to pursue equitable claims notwithstanding failure to schedule claims in bankruptcy precluding claims for monetary relief);  <u>Bridgewater v. Northrop Grumman Ship Systems, Inc.</u>, 2007 U.S. Dist. Lexis 87926, *28-28 (S.D. Miss. 2007) (former debtor allowed to pursue claims for injunctive and declaratory relief because "success on the merits of plaintiffs declaratory judgment and injunctive relief claims would have added no value to his bankruptcy estate"); <u>Wheeler v. Florida Dep't of Corrections</u>, 2006 U.S. Dist. Lexis 57048 (M.D. Fla. 2006) (since plaintiff's claim for injunctive relief "is of no monetary value to the bankruptcy estate, plaintiff is permitted to remain as a plaintiff along with the trustee for the limited purpose of pursuing the equitable relief"); <u>Lett v. Reliable Ruskin</u>, 2006 U.S. Dist. Lexis 50541, *23-25 (M.D. Ala. 2006) (claims for injunctive relief can be pursued by former debtor since, "if the court were to fulfill these requests, no value would be added to [the debtor's] bankruptcy estate and his creditors and Trustee would not be affected");; <u>Calafiore v. Werner Enterprises, Inc.</u>, 418 F.Supp.2d 795 (D. Md. 2006) ("given the potential severity of the remedy – i.e. completely preventing a plaintiff from asserting an otherwise meritorious claim – courts have been careful in barring certain forms of relief while allowing others stemming from the same claim.").

---

*(Footnote cont'd from previous page.)*

Court's order granting WaMu's motion to dismiss the injunctive relief claims.

- 9 -

Indeed, even in this circuit, courts have indicated that claims for injunctive relief may move forward even if damage claims cannot because of nondisclosure in a prior bankruptcy. In Javaid v. Allied Barton Security Services, 2008 U.S. Dist. Lexis 35335 (E.D. Cal. 2008), the court precluded the plaintiff from pursuing a Title VII damages claim because he had failed to disclose the claim in a prior Chapter 7 bankruptcy. Citing Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir. 2002), however, the court noted that if the plaintiff had brought nonmonetary claims, they would have been treated differently:

> Since plaintiff seeks only monetary relief in this action, not injunctive relief, there is no rationale for permitting this case to proceed on the latter basis.

Javaid, 2008 U.S. Dist. Lexis 35335, *33 n. 14. The court further indicated that if plaintiff had sought reinstatement or other equitable relief, they would likely have been allowed to proceed, since *"[t]hose remedies would not be involved or of value to the bankruptcy estate."* 2008 U.S. Dist. Lexis 35335, *34.

In short, there was not only a good faith basis to claim that the injunctive relief claims survive, but in fact the overwhelming weight of authority indicates that a plaintiff may proceed with a claim for injunctive relief, even if the plaintiff had intentionally failed to disclose those claims in a prior bankruptcy. For yet another reason, then, WaMu's motion for sanctions is completely baseless, and was made without reasonable and competent inquiry.

### C. The Pro Se Nature Of The Initial Complaint

Finally, Washington Mutual moves to impose sanctions on the Yacks personally – but not counsel -- based on the fact that the Yacks filed a *pro se* Complaint on November 19, 2007 which was "ghostwritten" by attorney Paul Grobman.

There are several fundamental problems with this claim. First, WaMu previously brought this identical claim to the Court's attention in Defendant Washington Mutual Bank's

■ 10 -

Request For Administrative Relief To Plaintiffs' Amended Complaint, ("Request for Administrative Relief") filed on April 17, 2008. In it Request for Administrative Relief, it alleged that the Yacks had been represented by counsel for some time as "Mr. Grobman plainly provided the Plaintiffs with legal services prior to the filing of the amended complaint, and indeed, obviously wrote the original complaint." (Request for Administrative Relief, p. 4). By Order dated April 21, 2008, the Court summarily denied WaMu's motion that it investigate the matter, yet WaMu again attempts to rehash this matter by bringing claims against the Yacks in its current filing.

Second, even if the Court has not already disposed of WaMu's claims, the Yacks were required to file a complaint and proceed *pro se* because they did not have an attorney admitted to practice in the District Court for the Northern District of California. Stoner v. Santa Clara County Office of Education, 502 F.3d 1116, 1125-26 (9th Cir. 2005) (party must proceed *pro se* where she does not have an attorney admitted to practice in the district). Indeed, even where an attorney is the plaintiff and has drafted the complaint, he must appear *pro se* if he is not admitted to practice in the district where the case is brought. And, even for a sophisticated litigant, there is nothing in the filing procedures for this or any other federal district which would allow a *pro se* litigant to advise the court that they had help drafting the Complaint, much less any direction that they are required to do so.

Third, even if the court's procedures provided the Yacks with a way to advise the court that their *pro se* action initially utilized a complaint which was drafted by a non-admitted attorney – and even if they were required to do so – no authority (none cited by WaMu or any the Yacks know of) even suggests that the failure to do so is sanctionable.

■ 11 -

OPPOSITION TO MOTION FOR SANCTIONS
CASE NO. 07-5858-PJH

**D.    The Yacks And Their Attorneys Are Entitled To Reasonable Fees And Expenses.**

Given the ample precedent from this and other circuits supporting the Yacks' claims, WaMu's assertion in its Rule 11 motion claim that the Yacks' causes of action have "absolutely no chance of success under the existing precedent" (Washington Mutual Brief, p. 3-4) demonstrates either extreme negligence, or an intentional disregard for existing precedent.   In reality, WaMu's motion is nothing more than a crude attempt to improperly bully the Yacks into dropping their claims based on baseless claims to sanctions.  Failing to take action condones WaMu's and its counsel's sanctionable tactics.  At a minimum, the plaintiffs are entitled to their attorneys fees for the opposition to WaMu's motion.

Under Rule 11(c)(1)(A), a court may award reasonable expenses, including attorneys fees, to a party who prevails on a motion for sanctions. <u>Patelco Credit Union v. Sudhir Sahni</u>, 262 F.3d 897 (9th Cir. 2001)  Under Rule 11, "fees may be awarded to the prevailing party on a Rule 11 motion, including the target of the motion, without a showing that the motion was frivolous." <u>Netbual v. Bindview Development Corp.</u>, 2007 U.S. Dist. Lexis 44460, *9-10 (N.D. Cal. 2007); <u>Vedatech, Inc. v. St. Paul Fire & Marine Insurance Co.</u>., 2005 U.S. Dist. Lexis 45095, *44 (N.D. Cal. 2005) (target of Rule 11 motion entitled to attorneys fees and expenses for opposing motion).

Even though there is no such requirement, the Yacks and their counsel have demonstrated that WaMu's Motion for Sanctions completely ignored numerous decisions demonstrating that the Yacks' claims in this action were not only made in good faith, but had substantial legal support.  Under these circumstances, and since the very purpose of Rule 11 is to "discourage parties from filing motions which are frivolous [or] legally unreasonable", <u>Estate of Blue</u>, 120 F.3d at 905, the Yacks' and their counsel respectfully submit that they are entitled

■  12 -

to their attorneys fees in opposing WaMu's Rule 11 Motion.

## IV.     CONCLUSION

Based on the foregoing, the Court should deny Defendants' motion for sanctions, and award attorneys fees and costs to the Yacks and their counsel for the fees and expenses associated with responding to Washington Mutual's Rule 11 Motion for Sanctions.

Dated: June 27, 2008

DEAN D. PAIK

PAUL S. GROBMAN

By     /s/ Dean D. Paik
       DEAN D. PAIK

Attorneys for HELEN and MARTIN YACK on behalf of themselves and all others similarly situated

- 13 -