JAMES F. McCABE (CA BAR NO. 104686)
E-mail: JMcCabe@mofo.com
ADRIANO HRVATIN (CA BAR NO. 220909)
E-mail: AHrvatin@mofo.com
SARAH E. GRISWOLD (CA BAR NO. 240326)
E-mail: SGriswold@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
WASHINGTON MUTUAL BANK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HELEN and MARTIN YACK, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON MUTUAL, INC.; SUNLAN-020105, LLC; SHERIFF'S DEPARTMENT, COUNTY OF LOS ANGELES, CALIFORNIA; CLERK'S OFFICE, COUNTY OF BUTTE, CALIFORNIA; and DOES 1-10,<br><br>Defendants. | Case No. C-07-5858 PJH<br><br>**CLASS ACTION**<br><br>**DEFENDANT WASHINGTON MUTUAL BANK'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS**<br><br>Date:   July 23, 2008<br>Time:  9:00 a.m.<br>Place:  Courtroom 3, 17th floor<br><br>Honorable Phyllis J. Hamilton |

## INTRODUCTION

Plaintiffs' opposition to defendant Washington Mutual Bank's motion for sanctions is almost entirely unresponsive to the motion made. Rather than attend to the issues actually raised — whether plaintiffs and their counsel should be sanctioned for commencing and maintaining a suit in which they had no standing and are judicially estopped from pursuing, and whether plaintiffs should be sanctioned for portraying themselves as acting *in propria persona* — counsel simply reargue the motion to dismiss that plaintiffs lost.

As this Court held in its June 23, 2008 order, plaintiffs Helen and Martin Yack never had standing to bring this case. With the undisclosed assistance of an attorney not admitted in California, they filed their original, ghost-written complaint in November 2007, three days after receiving a discharge order in their voluntary bankruptcy case. In the bankruptcy court, plaintiffs failed to advise the bankruptcy trustee of any possible claim against Washington Mutual. When the ghost-written complaint's author, attorney Paul Grobman, finally revealed himself in March 2008 by filing an amended complaint listing him as counsel for plaintiffs, Washington Mutual promptly advised counsel of the facts and the Ninth Circuit case law establishing — just as the Court recently found — that plaintiffs lacked standing. The Yacks did not voluntarily dismiss their complaint. Washington Mutual served, but did not file, a motion under Rule 11 of the Federal Rules of Procedure to give the Yacks another opportunity to dismiss the case within the rule's safe-harbor period. The Yacks failed to do so.

Now, notwithstanding the Court's order, which unequivocally ruled against the Yacks, plaintiffs and their attorneys oppose Washington Mutual's sanctions motion, apparently believing that "the best defense is a good offense." They claim that *Washington Mutual's* counsel should be sanctioned. At bottom, however, the Yacks cannot escape that they never had standing to bring this lawsuit, or even if they had acquired standing, that they are judicially estopped from pursuing the claims. Because the complaint resulted from an insufficient pre-filing investigation into the facts and scope of applicable law, sanctions are warranted under Rule 11.

## BACKGROUND

The relevant facts here revolve around the Yacks' Chapter 7 bankruptcy proceeding, which was commenced on July 20, 2007.[1] It is undisputed that the Yacks failed to disclose *any* of the claims they asserted in their federal complaint. The claims concerned events that took place between November 2006 and February 2007 — *prior* to the filing of the bankruptcy filing. The Yacks were discharged from bankruptcy and their bankruptcy case was closed on November 16, 2007. (Declaration of James F. McCabe in Support of Defendant Washington Mutual Bank's Motion for Sanctions ("McCabe Decl.") Ex. B.) Three days later, the Yacks filed the instant action, purportedly *in propria persona*. (Docket No. 1.)

On April 2, 2008, counsel for Washington Mutual spoke by telephone with plaintiffs' attorney Dean Paik and stated that since the Yacks had filed a petition in bankruptcy *after* the events underlying this suit had occurred, but had not listed any claim against any defendant, they lacked standing to prosecute their complaint. (McCabe Decl. ¶ 3.) On April 3, counsel provided Mr. Paik with copies of the Yacks' bankruptcy petition and discharge order. The documents established that any claim the Yacks may *once* have had against defendants was *no longer* "their" claim — by filing for bankruptcy on July 20, 2007, the Yacks transferred any claim to the bankruptcy trustee. (*Id.* ¶ 4, Ex. C.) Counsel also provided Mr. Paik with applicable legal authorities showing that plaintiffs lacked standing and are further judicially estopped from pursuing their claims. (*Id.*) Mr. Paik declined to dismiss the complaint. (*Id.* ¶ 4.)

On April 17, 2008, counsel spoke with Mr. Paik again and renewed Washington Mutual's request that the Yacks dismiss the complaint. Mr. Paik declined to do so. (*Id.* ¶ 5.) On May 7, Washington Mutual filed its motion to dismiss the Yacks' complaint. (Docket No. 25.)

On April 29, 2008, Washington Mutual also served, but did not file, a sanctions motion under Rule 11. The Yacks failed to take corrective action within the 21-day safe-harbor period. (McCabe Decl. ¶¶ 6–7.) Instead, they moved in the bankruptcy court to re-open their bankruptcy

---

[1] Washington Mutual's opening sanctions motion set forth several of these key facts. Any repetition here is designed to provide a complete chronology, supplemented with events that have taken place since the original motion's filing.

DEFENDANT WASHINGTON MUTUAL BANK'S REPLY ISO MOTION FOR SANCTIONS  2
CASE NO. C-07-5858 PJH
sf-2542095

proceeding and to request abandonment of the claims they alleged here. (*See* Declaration of Paul Grobman in Support of Plaintiffs' and Their Attorneys' Opposition to Defendant Washington Mutual Inc.'s Motion for Rule 11 Sanctions, filed June 27, 2008 ("Grobman Decl."), ¶ 2 & Ex. B.) In essence, plaintiffs sought to "cure" the fact that they lacked standing when they filed the complaint by acquiring the claims thereafter. On June 10, the bankruptcy court denied the abandonment motion. A civil minute order was entered on June 13. (*See* Statement of Recent Decision, filed June 16, 2008.) Undeterred, the Yacks filed a renewed motion to compel abandonment on June 20. (*See* Notice of Plaintiffs' Filing of Renewed Motion to Request Abandonment Pursuant to Bankruptcy Rule 6007, filed June 23, 2008.) The bankruptcy trustee on July 7 filed an opposition to the renewed motion.

On June 23, 2008, this Court dismissed plaintiffs' complaint with prejudice on the grounds that the Yacks lacked standing, as the claims were held by the bankruptcy trustee, *not* the Yacks. (*See* Order Granting Motion to Dismiss ("Order").) The Court also held that because the Yacks had concealed the putative claims from the bankruptcy trustee, the Yacks would be estopped to assert the claims *even if* they had standing.

## ARGUMENT

### I.  SANCTIONS ARE APPROPRIATE AS THE YACKS AT ALL TIMES LACKED STANDING TO PURSUE THE CLAIMS ASSERTED IN THE ORIGINAL AND AMENDED FEDERAL COMPLAINTS.

#### A.  The Yacks Never Had Standing to File The Complaints.

Since the Yacks in their bankruptcy case failed to disclose their supposed claims against Washington Mutual, they lacked standing to file the original complaint herein. *See Cusano v. Klein*, 264 F.3d 936, 947–48 (9th Cir. 2001) (holding that a debtor did not have standing to pursue legal claims that accrued before his bankruptcy petition but that he did not schedule). The Yacks should be presumed to have known the contents of their own bankruptcy petition (particularly their express disavowal of the existence of any unliquidated claims), as well as the fact that the discharge order in their bankruptcy case was filed three days before the filing of the

original complaint herein. They should thus be presumed to have known that they lacked standing when they filed the original complaint.

As for plaintiffs' counsel, Mr. Grobman should have conducted a reasonable investigation of the facts before assisting the Yacks in filing the original complaint herein. When the Yacks filed their amended complaint in March 2008, Mr. Grobman was listed as counsel as was Mr. Paik. Rule 11's pre-filing investigation requirement applies to the amended complaint with the same force as to the original complaint. A reasonable investigation by counsel, prior to the filing of the amended complaint, would have revealed that plaintiffs lacked standing and that this Court thus lacked subject matter jurisdiction over the matter.

That the Yacks eventually moved to re-open their bankruptcy proceeding and requested that the bankruptcy trustee abandon the claims is of no moment. The Rule 11 analysis properly focuses on the propriety of the paper *when filed*. Plaintiffs clearly lacked standing when both the original complaint and the amended complaint were filed. The appropriate course for plaintiffs and their counsel, once the Rule 11 motion was served, was to *dismiss* this case in the safe-harbor period and to re-file the action if and when they acquired a claim from the trustee. Making an attempt to acquire standing six months after a case is filed does not create standing *nunc pro tunc*. Even if acquiring standing after filing the action excused counsel for filing an invalid complaint, the attempt here was unsuccessful: the bankruptcy trustee did *not* abandon the claims. (Order at 6 (holding that "[u]nfortunately for plaintiffs . . . the bankruptcy court affirmatively denied their motion requesting that the trustee abandon the instant claims").) Under these circumstances, "the bankruptcy estate" remained "the real party plaintiff in interest." *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004).

In defense of their conduct in filing pleadings in November 2007 and in March 2008, plaintiffs now claim that Washington Mutual in late May 2008 interfered with efforts to acquire their claims out of bankruptcy. (Plaintiffs' and Their Attorneys' Opposition to Defendant Washington Mutual Inc.'s Motion for Rule 11 Sanctions, filed June 27, 2008 ("Opp."), at 2.) The

contention is irrelevant to the questions on this motion and is, incidentally, wrong.[2] The only questions on this motion are: (1) whether the Yacks could, after an inquiry reasonable under the circumstances, allege in the November 2007 complaint that they were acting *in propria persona* and that they had standing; and (2) whether both Mr. Grobman and Mr. Paik, who submitted the March 2008 amended complaint conducted "an inquiry reasonable under the circumstances" before filing a complaint on behalf of persons who clearly lacked standing and are judicially estopped to assert the claims therein under Ninth Circuit law. Whatever Washington Mutual did or did not do in May 2008 has no bearing whatsoever on these questions.

### B. Plaintiffs Continue to Misconstrue Out of Circuit Authority and Ignore Ninth Circuit Authority In Arguing They Have Standing To Assert Claims Still Owned by The Trustee.

At the motion-to-dismiss stage, the Yacks maintained that they had standing to pursue declaratory and injunctive relief regardless of whether the bankruptcy trustee retained their claim for "monetary" relief. The Yacks relied on *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), an Eleventh Circuit decision that never addresses *standing* — it concerns only judicial estoppel. Plaintiffs also wholly ignored the applicable holdings of *Cusano* and *Dunmore*, which hold that the debtor, rather than the bankruptcy estate, must own the claim upon which he is suing. *See also Turner v. Cook*, 362 F.3d 1219, 1225–26 (9th Cir. 2004) (providing that upon filing a petition for bankruptcy, all legal and equitable interests of the debtor become the property of the bankruptcy estate as represented by the bankruptcy trustee). The Court properly rejected the Yacks' argument:

---

[2] Washington Mutual acted in the bankruptcy proceeding to correct several material misrepresentations Mr. Grobman made to the bankruptcy trustee to persuade him to abandon their claims, and to alert the bankruptcy court to the fact that a putative asset of the estate had been concealed by plaintiffs when their bankruptcy petition was filed. Mr. Grobman's efforts were nearly successful, as the trustee initially had no opposition to the abandonment request. The trustee, however, was unaware of several key facts. For example, counsel for the Yacks had represented that the claims had little value to the bankruptcy estate. (Grobman Decl. Ex. E (providing that the trustee's initial position was "based on prior conversations with Mr. Gruber [sic], the attorney representing the Yacks in their action against Washington Mutual, that the total value of their claim was minimal . . . less than $1,000.00").) Moreover, the trustee had not been told that the Yacks purported to bring their federal case as a putative class action, which could present significant value to the Chapter 7 bankruptcy estate. (*Id.*) Upon learning these facts, the trustee withdrew his consent to the requested abandonment.

> Not only is [*Burnes*] not controlling, however, it is not on point as it deals with the question of judicial estoppel, *not* standing. Accordingly, plaintiffs cannot escape the conclusion that all of their claims — whether seeking monetary, declaratory, or injunctive relief — are barred pursuant to valid and *controlling* Ninth Circuit authority.

(Order at 6 (emphasis in original).)

In opposition to Washington Mutual's motion for sanctions, the Yacks persist that "ample legal authority supports their argument that — even if the trustee did not abandon the money damage claims — the Yacks['] claims for injunctive relief could still go forward." (Opp. at 8.) This is not the place, however, to argue for reconsideration of the Court's ruling. Nor could the Yacks do so in good faith.[3] They continue to rely on *Burnes*. And, the "ample authority" the Yacks refers to consists of seven cases, none of which were decided in the Ninth Circuit. An eighth citation is to a district court opinion within the Ninth Circuit, but not within this district. None of these decisions are controlling. More importantly, none of them change the *controlling law of this circuit*, as set forth in *Cusano* and *Dunmore*.[4]

## II.  SANCTIONS ARE ALSO APPROPRIATE BECAUSE THE YACKS ARE JUDICIALLY ESTOPPED FROM PURSUING THEIR CLAIMS.

The law of judicial estoppel is clear in the Ninth Circuit. "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire &*

---

[3] The Yacks allegedly "may seek leave of this Court to file a motion to reconsider the Court's order granting WaMu's motion to dismiss the injunctive relief claims." (Opp. at 8–9 n.3.) If the Yacks seek reconsideration based on the contentions set forth in the instant opposition, they do not meet the strict reconsideration requirements of Civil Local Rule 7-9(b). Moving for reconsideration on those grounds would itself be sanctionable.

[4] All of the cases are also readily distinguishable. By way of example, nearly all of the cited authorities, like *Burnes*, focus exclusively on judicial estoppel, *not* whether the plaintiff has standing. *See, e.g., Javaid v. Allied Barton Security Services*, No. CIV S-07-0386, 2008 U.S. Dist. LEXIS 35335 (E.D. Cal. Apr. 29, 2008); *Bridgewater v. Northrop Grumman Ship Systems, Inc.*, No. 1:06CV769, 2007 U.S. Dist. LEXIS 87926 (S.D. Miss. Nov. 29, 2007); *Lett v. Reliable Ruskin*, No. 1:05cv479, 2006 U.S. Dist LEXIS 50541 (M.D. Ala. July 24, 2006); *Castillo v. Coca-Cola Bottling Co.*, No. 06-183, 2006 U.S. Dist. LEXIS 32062 (E.D. Pa. May 22, 2006); *Calafiore v. Werner Enterprises, Inc.*, 418 F. Supp. 2d 795 (D. Md. 2006).

*Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). A plaintiff "is precluded from pursuing claims about which he had knowledge, but did not disclose, during his bankruptcy proceedings, and . . . a discharge of debt by a bankruptcy court, under these circumstances, is sufficient acceptance to provide a basis for judicial estoppel, even if the discharge is later vacated." *Id.* at 784. The Court found the doctrine particularly applicable to this record. In dismissing the Yacks' complaint on judicial-estoppel grounds, the Court held that:

> [P]laintiffs here failed to disclose the instant claims against defendants in the bankruptcy proceedings, despite having knowledge of all the facts underlying the claims well before plaintiffs filed for bankruptcy on July 20, 2007. This failure to disclose their claims was an integral part of plaintiffs' bankruptcy claim, and the bankruptcy court's ultimate decision to issue a report of no asset case. Thus, plaintiffs' failure to disclose the instant claims as assets, ultimately worked to plaintiffs' advantage in the bankruptcy proceedings. Now, however, plaintiffs wish to take an inconsistent position, by asserting claims that should have been disclosed, and were required to be disclosed, to obtain monetary and declaratory relief. Accordingly, even if plaintiffs had standing, they would be estopped from proceeding on these claims against these defendants.

(Order at 7 (internal citations omitted).)

Sanctions are warranted because plaintiffs' attorneys were made well aware of the legal authorities providing that even if the Yacks had acquired standing to pursue their claims, they would be judicially estopped from doing so in this case. (*See* McCabe Decl. Ex. C (citing *Hamilton*, 270 F.3d 778, and *Hay v. First Interstate Bank*, 978 F.2d 555 (9th Cir. 1992)).) Plaintiffs' counsel ignored these authorities and did nothing to correct the deficiency in their complaint. The Yacks instead returned to the bankruptcy court and attempted to acquire standing. The Yacks sought, in essence, to be rewarded for hiding their assets from the trustee and their creditors — exactly the harm the doctrine of judicial estoppel is designed to prevent. The Yacks and their attorneys are subject to sanctions for unreasonably maintaining this action.

### III. SANCTIONS ARE APPROPRIATE AGAINST HELEN AND MARTIN YACK AS INDIVIDUALS.

Washington Mutual seeks sanctions against individual plaintiffs Helen and Martin Yack on two grounds: (1) that they misled the Court by filing a purported complaint *in propria persona* when they were instead represented by Mr. Grobman; and (2) the Yacks pursued claims they had no standing to pursue and are judicially estopped from pursuing. The Yacks' opposition purports to refute the first ground (unsuccessfully) but inexplicably ignores the latter.

The Yacks attempt to justify their misrepresentation of *in pro per* status through Mr. Grobman's confession to an entirely separate wrongdoing: the unlicensed practice of law in California. Plaintiffs claim that *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116 (9th Cir. 2005) holds that a party must proceed *in pro per* where her attorney is not admitted in California. *Stoner* holds nothing of the sort. It instead provides: "It has long been established that an individual wanting to prosecute or defend an action in federal court must be represented by a lawyer admitted to practice before that court, unless such individual is permitted to proceed *pro se* under 28 U.S.C. § 1654 or other federal law, *see C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697–98 (9th Cir. 1987), or is himself an attorney granted *pro hac vice* admission." 502 F.3d at 1126.[5]

Plaintiffs' explanation is that since Mr. Grobman, who wrote the original complaint, is not licensed in California, *his name could not show up on paper.* What the plaintiffs overlook is that the reason Mr. Grobman's name should not *show up on paper* is that it would be a misdemeanor under California law for Mr. Grobman to *provide the services* reflected in the paper. Cal. Bus. & Prof. Code § 6125 (providing that "[n]o person shall practice law in California unless the person is an active member of the State Bar"); Cal. Bus. & Prof. Code § 6126(a) (providing that the unlicensed practice of law is a misdemeanor). A lawyer practices law "in California" where there

---

[5] *Stoner* goes on to hold that "[w]hile [28 U.S.C. § 1654] allows Stoner to prosecute his own actions *in propria persona*, that right is personal to him, and absent some other statutory authorization, Stoner has no authority to prosecute an action in federal court *on behalf of others than himself*." 502 F.3d at 1126 (emphasis added). This, of course, is what the Yacks purported to do in filing an *in pro per* action as a putative class action.

1  is "sufficient contact with the California client to render the nature of the legal service a clear
2  legal representation." *Birbower v. Superior Court*, 17 Cal. 4th 119, 128 (1998).  Practicing law
3  "in California" "does not necessarily depend on or require the unlicensed lawyer's physical
4  presence in the state." *Id*. at 128–29.  Drafting a detailed complaint on behalf of California
5  residents to be filed in a federal court in California indubitably constitutes the practice of law in
6  California.  The Yacks can hardly defend their misrepresentation of their *in pro per* status by
7  claiming "We *had* to do it, since if we'd been honest, Mr. Grobman could have been busted."

8       As for the Yacks' violation of Rule 11 in filing suit without standing and when judicially
9  estopped, the discussion above is sufficient.  Sanctions should be imposed on the individual
10 plaintiffs.  *See* Fed. R. Civ. P. 11(c)(1) (providing that a party may be sanctioned).

## CONCLUSION

12      Plaintiffs and their counsel have unnecessarily wasted the time of both the Court and
13 defendant Washington Mutual Bank.  Inasmuch as they were given a clear, fair chance to avoid
14 imposing unnecessary costs on Washington Mutual, defendant respectfully requests that the Court
15 grant its motion and impose sanctions, as the Court deems appropriate, against plaintiffs Helen
16 and Martin Yack and their counsel Dean Paik and Paul Grobman.  Should the Court hold in its
17 favor on the threshold question of entitlement to sanctions, Washington Mutual is prepared to
18 submit to the Court records of its fees and expenses related to the sanctionable conduct.

19 Dated:  July 9, 2008

JAMES F. McCABE
ADRIANO HRVATIN
SARAH E. GRISWOLD
MORRISON & FOERSTER LLP


By: /s/ James F. McCabe
     James F. McCabe

Attorneys for Defendant
WASHINGTON MUTUAL BANK