UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HELEN AND MARTIN YACK, et al.,

    Plaintiff,

    v.

WASHINGTON MUTUAL INC., et al.,

    Defendant.

_____/

No. C 07-5858 PJH

**ORDER DENYING MOTION FOR RULE 11 SANCTIONS**

    The motion of defendant Washington Mutual, Inc., ("WaMu") for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") against plaintiffs Helen and Martin Yack (collectively the "Yacks") and plaintiffs' counsel, Paul Grobman ("Grobman") and Dean Paik ("Paik"), came on for hearing on July 23, 2008, before the court. WaMu appeared by its counsel, Jim McCabe and Sarah Griswold, and Grobman and Paik appeared on behalf of themselves and the Yacks. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES the motion for the following reasons.

## BACKGROUND

    The Yacks are California residents who brought suit against defendants WaMu,

1  Sunlan-020105, LLC ("Sunlan"), the Los Angeles County Sheriff's Office, and the County
2  of Butte Clerk's Office as a result of defendants' alleged improper freezing of the Yacks'
3  checking account assets that were derived from Social Security benefits.  See generally
4  Amended Complaint for Violations of Fair Debt Collection Practices Act, etc. ("Amended
5  Complaint").

6  　　　The Yacks filed their original complaint *in propria persona* on November 19, 2007.

7  　　　On March 6, 2008, the Yacks filed their amended complaint, which was authored by
8  their attorneys, Paik and Grobman, and signed by Paik.  In the amended complaint, the
9  Yacks alleged that WaMu withdrew and transferred their checking account funds to the co-
10 defendants, despite knowing that the money in the checking account was exempt from
11 attachment under both federal and state law.  Amended Complaint, ¶ 38.  In so doing,
12 WaMu failed to comply with federal and state statutes that specifically obligate WaMu to
13 ensure that funds from social security and other public benefit payments are not subject to
14 attachment.  Id. at ¶¶ 40-41.

15 　　　On May 7, 2008, defendants WaMu and Sunlan filed a joint motion to dismiss the
16 action for lack of subject matter jurisdiction and for failure to state a claim.  Also on May 7,
17 2008, defendant Los Angeles County Sheriff's Office filed a motion to dismiss for failure to
18 state a claim, and joined in WaMu and Sunlan's motion to dismiss for lack of subject matter
19 jurisdiction.

20 　　　On June 23, 2008, the court issued an order granting defendants WaMu, Sunlan and
21 Los Angeles County Sheriff's Office's motion to dismiss.  See Yack v. Washington Mutual,
22 Inc., et. al., 389 B.R. 91, 97 (N.D. Cal. 2008).  The court noted that the alleged claims are
23 based on events that occurred prior to the Yacks filing of a voluntary bankruptcy petition on
24 July 20, 2007.  Id. at 95.  The court further noted that they filed their original complaint on
25 November 19, 2007, three days after they were discharged from bankruptcy, and thus at
26 filing, their claims no longer belonged to them as they had already become the property of
27 the bankruptcy estate.  Id. at 95-96.  Accordingly, the court found that the Yacks did not
28 have standing to pursue their claims, and further that they were judicially estopped from

2

1  pursuing claims held by the bankruptcy estate. Id. at 95-97.

2  Now, WaMu moves for Rule 11 sanctions against the Yacks and their attorneys, Paik, and Grobman, asserting that because the Yacks had no standing to pursue their claims, the allegations of the original and amended complaint were frivolous.

## DISCUSSION

### A. Legal Standards

Under Rule 11, the court may award sanctions against a party or a party's counsel found to have filed a motion with the court that is either frivolous, made for an improper purpose, or both. Fed. R. Civ. P. 11(b) &(c); see also, e.g., Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002). Frivolous filings are those that are "both baseless and made without a reasonable and competent inquiry," and the motion must lack support in either the facts or the law. See, e.g., Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir. 1997). With respect to complaints, a finding of frivolousness is a prerequisite to a finding of improper purpose – if the complaint is not frivolous, the plaintiff's purpose is immaterial. See Townsend v. Holman Consulting Corp., 914 F.2d 1136, 1140 (9th Cir. 1990). But groundless claims included in a pleading for the purpose of harassment or to cause unnecessary delay justify sanctions even if the entire pleading is not for an improper purpose. See Hudson v. Moore Business Forms, Inc., 836 F.2d 1156, 1163 (9th Cir. 1987).

These inquiries are made from an objective standpoint. G.C. and K.C. Investments, Inc. v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 1990). A court is authorized to impose appropriate sanctions, but such sanctions must be limited to "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2).

### B. Analysis

WaMu generally argues that the Yacks and their attorneys made frivolous legal allegations in the original and amended complaints, and should be sanctioned under Rule 11(b)(2). Specifically, WaMu makes two arguments. First, that the Yacks and their

3

attorneys failed to conduct an adequate investigation into the legal theories underpinning the Yacks' claims. Second, that the Yacks misrepresented that they were acting *in propria persona* when they filed their original complaint. For organizational purposes, the court discusses these allegations against the Yacks and against Grobman and Paik separately.

1. Grobman and Paik

Grobman and Paik commenced their representation of the Yacks after the original complaint had already been filed. Accordingly, any Rule 11 violation is limited to their involvement with the amended complaint.[1]

WaMu argues that the Yacks' amended complaint contains legally frivolous allegations because the Yacks did not have standing and were judicially estopped from pursuing their claims. It asserts that Grobman and Paik violated Rule 11(b)(2)[2] because they did not conduct an adequate investigation into the legal theories underlying their clients' claims. If they had, WaMu argues, they would have discovered that the Yacks failure to schedule their claims on their bankruptcy petition divests them of any ownership in the claims asserted in the amended complaint.

At the hearing, Grobman and Paik admitted that they had no knowledge of their clients' bankruptcy at the time they filed the amended complaint. Thus, Grobman and Paik argued, their inquiry was reasonable under the circumstances given their lack of knowledge. Grobman and Paik further admitted that they made no inquiry to ascertain whether the Yacks had ever filed for bankruptcy. In response, WaMu argued that Grobman

---

[1] WaMu contends that Grobman represented the Yacks when they filed their original complaint *in propria persona* on November 19, 2007. Specifically, WaMu alleges that Grobman ghostwrote the original complaint.

[2] Rule 11(b)(2) states, in pertinent part, that when an attorney or an unrepresented party presents a signed paper to a court, that person is certifying that to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Fed. R. Civ. Pro. 11(b)(2).

4

and Paik still violated Rule 11 even if they did not know about their clients' bankruptcy because they were required to conduct a reasonable and competent inquiry into the facts and circumstances that gave rise to the Yacks' claims and should have ascertained whether the Yacks had ever filed for bankruptcy prior to filing the amended complaint.

Although WaMu's original argument was premised on a Rule 11 (b)(2) violation, at the hearing it also argued that Grobman and Paik violated Rule 11(b)(3), which requires that an attorney conduct a reasonable and competent inquiry into whether their client's factual contentions have evidentiary support. See Fed. R. Civ. P. 11(b)(3). Thus, the additional issue now before the court is whether Grobman and Paik's failure to ask whether the Yacks had filed for bankruptcy protection prior to the filing the amended complaint is sanctionable conduct under Rule 11.

An attorney has a duty prior to filing a complaint to conduct a reasonable factual investigation and perform adequate legal research to confirm whether the theoretical underpinnings of a complaint are "'warranted by existing law or a good faith argument for an extension, modification or reversal of existing law.'" Christian, 286 F.3d at 1127 (quoting Golden Eagle Distrib. Corp. v. Burroughs Corp., 801 F.2d 1531, 1537 (9th Cir. 1986)). The requisite factual investigation required under Rule 11 is "an inquiry reasonable under 'all the circumstances of a case.'" Townshend v. Holman Consulting Corp., 929 F.2d 1358, 1364 (9th Cir. 1990) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 401 (1990) (citations omitted)). The reasonable person against which an attorney's conduct is measured is that of a competent attorney admitted to practice before the district court. Zaldivar v. City of Los Angeles, 780 F.2d 823, 830 (9th Cir. 1986), overruled on other grounds by Cooter, 496 U.S. at 399-400. With these standards in mind, it is important to note that "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." Operating Eng'rs Pension Trust v. A-C Company, 859 F.2d 1336, 1345 (9th Cir. 1988).

Before filing the amended complaint Grobman and Paik did not know that their clients had filed for bankruptcy and did not ask them whether they had, nor did they know that their clients had no standing to pursue the claims asserted in the amended complaint

5

1  because those claims belonged to the bankruptcy estate.  While Grobman and Paik's
2  conduct suggests a lack of competency in bankruptcy law and practice, the theoretical
3  underpinnings of their clients' claims are not rooted in bankruptcy law and those claims do
4  not necessarily suggest the necessity of an inquiry into bankruptcy.  Indeed, the bankruptcy
5  bar at issue here would apply to any claim.  And although WaMu suggests that any
6  competent lawyer would automatically inquire of every client before filing a complaint,
7  whether the client's claims had been discharged in bankruptcy, no authority was provided
8  for a finding that a failure to inquire is either malpractice or sanctionable.

9        In hindsight, it is clear that Grobman and Paik could have and perhaps should have
10 been more thorough in their investigation prior to filing the amended complaint.  However,
11 the court must avoid using the wisdom of hindsight and should instead evaluate an
12 attorney's conduct by determining what was reasonable at the time the pleading was
13 submitted.  Greenberg v. Sala, 822 F.2d 882, 887 (9th Cir. 1987).

14       WaMu, however, contends that Grobman, at least, did have reason to inquire about
15 the Yacks' bankruptcy.  It asserts that Grobman ghostwrote the original complaint, which
16 was filed three days after the Yacks' bankruptcy proceedings closed.  Thus, WaMu argues,
17 Grobman must have known, or had reason to know, that the Yacks filed for bankruptcy.
18 While Grobman did not deny involvement with the Yacks' original complaint, and his
19 involvement seems more than coincidental given the similarities between the original and
20 amended complaint, there is no proof that Grobman did in fact know about his clients'
21 earlier bankruptcy.  Even assuming that Grobman ghostwrote the original complaint as
22 WaMu suspects, the proximity of the dates of filing the original complaint and the
23 bankruptcy discharge, are insufficient to establish that Grobman knew about the
24 bankruptcy.  Nor does it add anything to this court's analysis as to why a failure to inquire is
25 not sanctionable conduct.

26       Thus, the court finds that neither Grobman's nor Paik's conduct warrants Rule 11
27 sanctions.

28       2.    The Yacks

WaMu also asserts that Rule 11 sanctions should be levied against the Yacks in connection with the filing of the original and amended complaints. They maintain that sanctions are warranted for two reasons. First, they argue that the Yacks failed to conduct an adequate investigation into the legal theories underpinning the claims in both complaints. Second, they argue that the Yacks misrepresented that they were acting *in propria persona* when they filed the original complaint.

A breach of Rule 11's implied warranty of lawyerly conduct may give rise to sanctions against the represented party, the lawyer, or both. Golden Eagle Dist. Corp., 801 F.2d at 1536. However, Rule 11 sanctions, because they are based on the certification inherent in the signature on papers presented to the court, are most often awarded against the attorney (or unrepresented party) who signed the unsupported filing. See, e.g., Lockary v. Kayfetz, 974 F.2d 1166, 1170 (9th Cir. 1992) (superceded by statute on other grounds). Sanctions may be imposed against a represented party in connection with the filing of a complaint when they personally violated Rule 11 or if they shared some responsibility for the violation. See Fed. R. Civ. P. 11(c)(1) ("the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation").

With respect to the amended complaint, the court finds that the Yacks did not personally violate Rule 11. As stated above, the issue regarding Rule 11 sanctions associated with the amended complaint is whether a proper inquiry was conducted regarding the Yacks' bankruptcy proceedings before the pleading was filed. The duty to make a factual inquiry into the claims alleged in the amended complaint rested with the Yacks' counsel, who signed the amended complaint. See Business Guides, Inc. v. Chromatic Communications Enter., Inc., 498 U.S. 533, 543 (1991) ("the certification requirement now mandates that all signers consider their behavior in terms of the duty they owe to the court system"). The Yacks did not breach this duty because they did not sign the amended complaint. Id. at 544.

With respect to the original complaint, WaMu contends that sanctions are warranted against the Yacks under Rule 11(b)(2) because they misrepresented that they were acting

7

1  *in propria persona* when they in fact had counsel.  In support, WaMu claims Grobman
2  ghostwrote the original complaint.  However, WaMu presents no evidence that supports its
3  suspicion that the Yacks did not proceed *in propria persona*.  Without evidence to the
4  contrary, the court cannot find that the Yacks did not file the original complaint *in propria*
5  *persona.*[3]

6        Under Rule 11(b)(2), a party filing *in propria persona* is required to conduct a
7  reasonable inquiry into the legal underpinnings of their claims before singing a complaint.
8  See Fed. R. Civ. Pro. 11(b) advisory committee's note ("[Subdivision b requires] attorneys
9  and pro se litigants to conduct a reasonable inquiry into the law and facts before signing
10 pleadings, written motions, and other documents, and prescribing sanctions for violation of
11 these obligations"); see also Warren v.Guelker, 29 F.3d 1386, 1390 (9th Cir. 1994) ("[Rule
12 11(b)] explicitly applies to parties not represented by attorneys").   Thus, a *pro se* plaintiff
13 may also be subject to sanctions for a violation of Rule 11(b)(2).  See Warren, 29 F.3d at
14 1390.  Although Rule 11 applies to *pro se* plaintiffs, the court is required to take into
15 consideration a plaintiff's *pro se* status when it determines whether the conduct at issue
16 was reasonable.  Id. at 1389; see also Fed. R. Civ. P. 11(b) advisory committee's note.
17 When the court considers what type of conduct is reasonable, it must apply an objective
18 standard of reasonableness.  Business Guides v. Chromatic Communications, 892 F.2d
19 802, 811 (9th Cir. 1989), aff'd, 498 U.S. 533 (1991).  However, what is objectively
20 reasonable for a *pro se* litigant and for an attorney may not be the same.  Id.

21       Unlike their attorneys, the Yacks obviously knew that they had petitioned for
22 bankruptcy protection and that they had not scheduled their claims in this law suit.  Thus

---

[3] Moreover, WaMu has presented no authority that ghostwriting subjects a plaintiff, or the ghost writing attorney for that matter, to sanctions under Rule 11(b)(2).  WaMu does cite three court cases from outside the Ninth Circuit that heavily criticize the practice, but none of the courts in these cases sanctioned the *plaintiff*.  See Ellis v. State of Maine, 448 F.2d 1325, 1328 (1st Cir. 1971) (discussing, in dicta, the practice of ghostwriting and disapproving of such practice); Laremont-Lopez v. Tidewater Opportunity Ctr., 968 F. Supp. 1075, 1079-80 (E.D. Va. 1997) (attorneys' conduct in ghostwriting plaintiffs' complaints did not warrant disciplinary proceedings or contempt sanctions absent showing of intentional wrongdoing); Johnson v. Bd. of County Comm'rs, 868 F. Supp. 1226, 1232 (D. Colo 1994) (ghostwriting of documents for pro se litigant may subject attorneys to contempt of court).

the question remaining is whether the Yacks conducted a reasonable investigation into the law before filing the original complaint in *propria persona*. WaMu contends that a reasonable inquiry would have revealed that the Yacks' failure to schedule their claims on their bankruptcy petition divests them of standing to pursue those claims in this lawsuit. As previously noted, the legal theories underpinning the claims alleged in the original complaint had nothing to do with bankruptcy law. Given the complexity of bankruptcy law and the fact that the Yacks had been represented by counsel in their bankruptcy action, the court finds their failure to inquire as to the effect of their bankruptcy on the claims asserted here which have nothing to do with bankruptcy law, was not entirely unreasonable. For these reasons, the court finds that the Yacks' conduct in connection with the filing of the original complaint does not violate Rule 11(b)(2). Thus no sanctions are warranted.

## CONCLUSION

In accordance with the foregoing, the court DENIES WaMu's motion for Rule 11 sanctions against Grobman and Paik and the Yacks.

**IT IS SO ORDERED.**

Dated: August 14, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge